UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL NO.: |
| v. | : | 3:05-cr-38 (JCH) |
| | : | |
| TRACY COSTIN, ET AL. | : | JULY 31, 2006 |

**RULING ON DEFENDANTS' MOTIONS TO SUPPRESS [Doc. Nos. 191, 197]**

**I.     INTRODUCTION**

Defendants Tracy Costin ("Costin"), Darryl Hylton ("Hylton"), and DataUSA, Inc.
("DataUSA"), now known as Viewpoint USA, Inc., were indicted on one count of
conspiracy and eleven counts of wire fraud.  Pending before the court are Costin's
[Doc. No. 191] and Hylton's [Doc. No. 197] motions to suppress evidence seized in the
course of two government searches of the offices of DataUSA.  Costin and Hylton
argue that the warrants that authorized these searches were insufficiently particular and
exceeded the probable cause established by their supporting affidavits, and that the
executing agents did not limit their searches to documents concerning DataUSA.

**II.     FINDINGS OF FACT**

The defendants contest the legality of two searches of the DataUSA offices.
The first was conducted in April 2004 and the second in June 2004, each pursuant to a
warrant.  The first warrant authorized a search of DataUSA's offices in Guilford, CT
"and the computer systems, storage media, and data contained therein."  April 2004
Warrant, Costin's Mot. Suppress, Ex. B [Doc. No. 191-2].  The second warrant
described the property or premises to be searched as "DataUSA Inc.'s Computers and

1

the computer systems, storage media and data contained therein, as specified in

paragraphs 12 through 15 of the affidavit in support of the search warrant."  June 2004

Warrant, Costin's Mot. Suppress, Ex. D [Doc. No. 191-2].  The June warrant also

stated, "These computers were voluntarily provided to the FBI by DataUSA, Inc., in

connection with another investigation."  Id.

Attachment B to the April warrant incorporated the following list of items to be

seized:

All records and information relating to violations of Title 18, United States Code, sections 371 (conspiracy), 1341 (mail fraud), and 1343 (wire fraud), including the following:

A. Information and Documents:  Any and all information, documents[ see footnote below] or items in whatever form mentioning or regarding:

1) polls conducted by Data USA for clients, including raw survey data files(including those generated by OSCAR or similar software), formatted survey spreadsheets and summary survey results prepared or provided to clients;

2) correspondence and email regarding or reflecting the transmission of survey or polling results to clients;

3) documentation regarding survey jobs and projects requests by clients

4) invoices, bills and records of payment by clients for polls and surveys conducted by DataUSA;

5) telephone bills and toll records; and

6) records for the purchase of computer and office equipment purchased or leased for use on the premises.

7) documentation regarding employee's identities and dates of employment at DataUSA.

April 2004 Warrant, Costin's Mot. Suppress, Ex. B [Doc. No. 191-2].  The footnote read:

2

"Document" means the originals (or any copies when originals are not available) unless otherwise stated, and any non-identical copies (whether different from the originals because of notes made on such copies or otherwise) of writings of every kind and description and any prior and/or draft versions of such originals, whether inscribed by hand or mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as electronic or tape recordings) or physical reproductions of oral statements, conversations, or events, and including, but not limited  to, correspondence, memoranda, meeting minutes, notes, reports, plans, analytical data, diagrams, logs, teletype messages, compilations, studies and tallies, and any computer programs, computer media, computer flow charts, block diagrams, assembled computer programs, and other computer service documentation which show computer program descriptions, computer logs, and historical data, and computer record layouts, including descriptions of coded data and handwritten instructions.  The above-described items may be in paper form or stored or contained on computer media, including, but not limited to, magnetic tapes, magnetic disks, punched cards, magnetic cassettes, CD Rom and floppy diskettes.

Id.  Attachment A to the June warrant incorporated the same list as Attachment B to the May warrant, but it was limited to information, documents, or items "contained on the computer systems or storage media."  June 2004 Warrant, Costin's Mot. Suppress, Ex. D [Doc. No. 191-2].

Although a different magistrate judge signed each warrant, both were supported by affidavits of FBI Agent Jeff Alan Rovelli ("Rovelli").  The affidavit supporting the April 2004 warrant was more detailed than the affidavit supporting the June 2004 warrant with respect to the evidence of fraud.  The former affidavit described statements by individual witnesses, including Costin, her estranged husband, Leonard Mastri ("Mastri"), and several former DataUSA employees.  The affidavit recounted that April Johnson, who worked at DataUSA from May 2001 to October 2002, had alleged the following:

Costin instructed all of the supervisors at DataUSA to increase the amount of time (which was recorded) for each call by staying on the computer with the survey still open after the interviewee disconnected.

3

> The calls were traced from when the interviewer disconnected the computer tracking system, not when the interviewee disconnected the telephone line. Employees systematically lengthened the calls by waiting to complete the survey on the computer for a period of time after the interviewee disconnected the telephone. This increased the amount of time billed to the client.

April 2004 Rovelli Aff. ¶ 8, Costin's Mem. Supp. Mot. Suppress, Ex. A [Doc. No. 191-2]. Johnson also stated that DataUSA employees fabricated survey responses to meet daily quotas set by Costin, and that the rate of fabrication of data on a job could be fifty percent or greater. Id. at ¶¶ 9-10.

Hilda Goclowski, a self-identified friend of Costin, stated that she worked as a part-time office manager at DataUSA for approximately a year, and at least some of this period overlapped with the dates of Johnson's employment. Goclowski recalled sampling manipulation and falsification of data, which she attributed to employees who were not performing their jobs properly. Id. at ¶¶ 11-14.

Susan Griego, who managed employees conducting telephone polls at DataUSA from February to September 2002, also discussed ways in which DataUSA employees fabricated polling data at Costin's instruction. According to the April 2004 affidavit, Griego claimed that the employees would fabricate unfinished survey answers if an interviewee hung up the phone "after a large percentage of the questions had already been answered," id. at ¶ 18, and that, "at the end of a specific job if DataUSA had not completed the required number of surveys, then DataUSA employees would just fill in the number of surveys needed to complete the job without actually interviewing anyone," id. at ¶ 20. The affidavit also stated, "Griego estimated that less than half of the total jobs complete[d] by DataUSA contained falsified surveys[ and] . . . that

4

depending on the survey, approximately 25 percent of the surveys for a particular job could have been filled out by DataUSA employees who were not actually talking to a caller.  Not every job contained falsified surveys and no entire job for a client consisted of completely falsified surveys."  Id.

Mastri, a consultant to DataUSA from approximately May 2001 through 2002 who thereafter worked sporadically for DataUSA, orally confirmed allegations the FBI had found in a document on one of his websites:

> In 2001, every job had a very high percentage of completely false records of telephone interview surveys . . . .  During 2002 work picked up and there were more callers but there never seemed to be enough interviewers to complete the jobs.  As the job deadlines approached, Johnson would enter false surveys to help fulfill the quotas. This happened on almost every job.

Id. at ¶ 28; see id. at ¶ 31.  Mastri's web posting also alleged that Costin, sometimes with his help, had falsified data on several specific jobs.  Id. at ¶¶ 28-29.  Furthermore, it stated that, "DataUSA backs up all data every night and that the data exists in several locations."  Id. ¶ 30.

The affidavit in support of the June 2004 warrant to search the DataUSA computers (and images thereof) that had been in FBI custody since Costin had consented to their search in connection with a 2003 investigation of Mastri, did not include as many details as the April 2004 affidavit.  The June affidavit specifically recounted interviews of Costin and Mastri, but it did not name the other employees as in the April warrant affidavit.  It stated, "Several DataUSA prior employees, who were supervisors, have been interviewed and advised that Costin instructed DataUSA employees to falsify polling data that was to be sent to DataUSA's clients," and then

summarized methods by which data was falsified and clients billed for falsified polling results.  June 2004 Rovelli Aff. ¶¶ 6-7, Costin's Mem. Supp. Mot. Suppress, Ex. C [Doc. No. 191-2].  The June affidavit also stated generally that Rovelli had obtained the information therein "from reports [he] ha[d] read, discussion with other agents and officers, interviews of individuals with first hand knowledge of these events, and from records obtained in the course of this investigation from victims and other sources."  Id. at ¶ 4.  In addition, it specifically stated that Mastri  "confirmed the information about DataUSA making up polling interviews" and "advised that the raw data located on the DataUSA computers would prove that surveys were falsified."  Id. at ¶ 17.

In explaining the importance of searching the computer and computer images of which the FBI had retained custody since 2003, the June Affidavit noted that those computer systems would provide historical data and other information that had not necessarily been retained on the computers searched pursuant to the April warrant. Presumably referring to the two computers that the FBI had imaged and returned to Costin, see id. at ¶ 16, Rovelli also suggested that Mastri, who had recently restarted a relationship with Costin, may have provided her with details about the government's investigation of her prior to the April 2004 search, possibly indicating that historic information seized in the April search had been altered since 2003.  Id. at ¶ 18.

Rovelli executed both search warrants in question.  The government conceded in its Supplemental Letter Brief of June 26 that "some documents created as early as 1998 may have been seized." Gov.'s Supplemental Letter Br. Opp. Mot. Suppress at 8 [Doc. No. 216].  All parties agree that DataUSA began doing business in 2001, although the moving defendants contend that it began operations on or about June 1, and the

government that it may have begun operations in May.  Letter from Attorney George G.
Kouros, Counsel to Tracy Costin, to the Court (July 26, 2006) [Doc. No. 231].
Regardless, the parties appear to agree that at least a small number of documents
were seized that were not created by and did not concern DataUSA.[1]

## IV.    DISCUSSION

### A.    Evidentiary Hearing

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the
moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable
the court to conclude that contested issues of fact going to the validity of the search are
in question."  United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005) (internal
citations and quotation marks omitted).  In the present case, although the defendants'
papers raise serious issues relating to the constitutionality of the warrant, there are no
contested issues of fact going to the validity of the search.  At the teleconference of July
26, 2006, Costin's and Hylton's counsel represented that they had been seeking an
evidentiary hearing only in the event that the government were to respond to the
defendants' arguments, that the warrant was insufficiently particular and overbroad, by
arguing that the executing agents lacked the means to conduct a narrower search of
DataUSA's computer hard drives.  All parties agreed that the government has not made
the aforesaid argument.   Therefore, the court finds an evidentiary hearing

---

[1]Costin's counsel represented at the July 26 telephone conference, without objection
from the other parties, that the documents with dates earlier than 2001 were most likely created
in connection with Costin's previous business.

unnecessary.[2]

## B.    Legitimate Expectation of Privacy

Costin and Hylton have the burden of establishing that their individual Fourth Amendment rights were violated by the challenged search and seizure.  Rakas v. Illinois, 439 U.S. 128, (1979).  To meet this burden, each must show that "the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect," id. at 140, giving the defendant a "legitimate expectation of privacy," id. at 143.  This inquiry involves two questions: first, a defendant "must demonstrate a subjective expectation of privacy in a searched place or item; and second, his [or her] expectation must be one that society accepts as reasonable."  United States v. Chuang, 897 F.2d 646, 649 (2d Cir. 1990).

"It is well-settled that a corporate officer or employee in certain circumstances may assert a reasonable expectation of privacy in his corporate office, and may have standing with respect to searches of corporate premises and records." Id. (internal citations omitted); see Mancusi v. DeForte, 392 U.S. 364 (1968) (holding that a defendant had standing to challenge search of an office, even if shared with other people, where the defendant "still could reasonably have expected that only those persons and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups.").

---

[2]To the extent that the issue of whether Costin consented to the June 2004 search, which was not discussed at the teleconference, might depend on contested issues of fact, see Costin's Mem. Supp. Mot. Dismiss at 33 n.17 [Doc. No. 191-1], the court notes that the government, which concedes that it bears the burden of establishing consent, Gov.'s Mem. Opp. Mot. Suppress at 31 [Doc. No. 200-1], represented at oral argument that it preferred that the court not conduct an evidentiary hearing.

The question whether a corporate officer has a reasonable expectation of privacy to challenge a search of business premises focuses principally on whether he has made a sufficient showing of a possessory or proprietary interest in the area searched. Moreover, he [or she] must demonstrate a sufficient nexus between the area searched and his [or her] own work space.  The presence of these factors necessarily must be determined on a case-by-case basis.

Chuang, 897 F.2d at 649-50 (original quotations and brackets omitted).  "Legitimation of expectations of privacy by law must have a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."  Rakas, 439 U.S. at 143 n. 12; see also Mancusi, 392 U.S. at 368 (internal citation omitted).

Although the government argued in its papers that Costin lacked standing to challenge the search and seizures at issue, at oral argument counsel for the government stated that he would not challenge Costin's standing so long as no evidentiary hearing was held.[3]  As no evidentiary hearing has been held, the government has conceded that Costin has standing to bring the present motion.

Hylton does not contend that he has any property interest in the premises searched or the items seized.  He nevertheless argues that he has a reasonable expectation of privacy in all of the areas of the DataUSA office from which the government seized evidence.  The government does not contest Hylton's claim that he had a legitimate expectation of privacy in his desk area,[4] but it argues that he did not have a legitimate expectation of privacy in any of the other areas searched or items

---

[3]The government also preferred to avoid an evidentiary hearing.

[4]See Gov.'s Supplemental Letter Br. re. Hylton at 1 [Doc. No. 218-1].

seized.

Hylton was the most senior supervisor at DataUSA.  Hylton Aff. ¶ 9.   He had a

desk in the supervisor's area[5] of the DataUSA office, a small area restricted to

supervisors.  He stored personal files in this area.  Hylton, but no other employees, also

had access to Costin's private office and the "Server Room," which housed the

DataUSA mainframe computer.  Id. at ¶ 9.  Hylton would enter Costin's office to deliver

work-related materials, for periodic meetings with Costin, and to store personal items in

a secure location.  Id. at ¶ 10.  He would also sometimes store personal items in the

Server Room.

Hylton's use of the supervisor's area, Costin's office, and the Server Room to

store personal items demonstrates his subjective expectation of privacy in these areas.

This expectation was also objectively reasonable, because the supervisor's area was

extremely close to his private desk and was clearly separated from the general shared

work areas in the office, and only he and Costin had access to her office and the Server

Room.  Even if Hylton did not have a traditional property interest in the office, his high-

ranking supervisory position also suggests that he reasonably expected privacy in those

areas that were exclusively for his use and the use of the owner of the corporation with

whom he worked closely.

He has also fulfilled the requirement of showing a nexus between his workspace

---

[5]Based on Hylton's statement that his desk "is in an area that was sometimes referred to
as the 'bullpen' and that "[t]his was the supervisor's area," Hylton Aff. ¶ 3 [Doc. No. 222-2], the
court concludes that the "supervisor's area" is limited to the mostly enclosed white rectangular
space pictured directly below the smaller shaded rectangle reading "DARRYL'S" on the diagram
attached to Hylton's affidavit. Id. Ex. A [Doc. No. 222-3].  A copy of this diagram is attached as
an addendum to this ruling.

and the supervisor's area, and his workspace and Costin's office.  However, he has not

provided any evidence that he performed work in the Server Room.  Therefore, he has

failed to show a nexus with respect to the Server Room.  The court finds that he had a

legitimate expectation of privacy with respect to the supervisor's area and Costin's

office, but not the Server Room.  See Chuang, 897 F.2d at 649-50 (requiring nexus).

To the extent the government suggests Hylton lacks standing because he has

not alleged seizure of any personal documents or files, the court disagrees.  Although

ownership of particular items is a "factor to be considered in determining whether an

individual's Fourth Amendment rights have been violated," United States v. Anderson,

154 F.3d 1225, 1231 (10th Cir. 1998) (quoting United States v. Salvucci, 448 U.S. 83,

91 (1980), Chuang makes clear that when an individual challenges an entire search,

the court must primarily consider the individual's expectation of privacy in the place

searched.  897 F.2d at 649.

Although Hylton has demonstrated a legitimate expectation of privacy in the

supervisors' area and Costin's office, he has not demonstrated a similar expectation

with respect to any other parts of the DataUSA office.  Moreover, he has failed to make

a showing that he had access to, let alone control or possession of, the data stored on

any of the computers aside from that located on his desk.  See United States v.

Triumph Capital, 211 F.R.D. 31, 54 (D.Conn. 2002) (holding that corporate officer

lacked standing to challenge search and seizure of laptop computer owned by

corporation, assigned exclusively to another individual, and in the exclusive custody and

control of the assigned individual).  The fact that an individual has a reasonable

expectation of privacy in a room does not mean he or she has a similar expectation with

respect to the contents of a storage device to which he or she is denied access.  Cf. Trulock v. Freeh, 275 F.3d 391, 403 (4th Cir. 2001) (citing United States v. Block, 590 F.2d 535, 539 (4th Cir.1978)) (analogizing password-protected computer files to locked footlocker and holding that user of shared computer lacked authority to consent to search of another user's password-protected files).

Rovelli, who executed the April 2004 warrant, has averred that the computer on Hylton's desk was not seized during that search.   Third Rovelli Decl. (6/26/06) ¶ 2 [Doc. No. 218-2].  Moreover, neither party has suggested that the computer on Hylton's desk was among the computers searched pursuant to the June 2004 warrant.  The court finds that Hylton has failed to demonstrate that he had a legitimate expectation of privacy in the data contained on any password-protected personal computers, servers, or computer storage devices that were actually seized.

For the foregoing reasons, the court concludes that Hylton has standing to object to the search of the supervisor's area and Costin's office, but not to the searches of data stored on computers, other than that kept on his personal desk, and not to the search of the Server Room. [6]

## C.    Warrant's Limitation to Documents Concerning DataUSA

Before proceeding to consider whether the warrants at issue are overbroad or general, the court clarifies that it reads both warrants to authorize seizure only of information or documents of DataUSA.  Where warrants authorize seizure of broadly

---

[6]If Hylton had access to and performed work on DataUSA computers other than that on his desk, he may have been able to show a privacy interest in the contents of such computers and their storage devices.  However, he has not presented evidence that he had access to any such computers.

worded categories of items, "the language of a warrant is to be construed in light of an illustrative list of seizable items." United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990) (citing United States v. Young, 745 F.2d 733, 759-60 (2d Cir. 1984); Andresen v. Maryland, 427 U.S. 463, 480-81 (1976)).   Therefore, the records and information relating to violations of the broad criminal statutes cited in Attachment B to the April warrant and Attachment A to the June warrant are limited by the text that followed. Moreover, although not every entry on the list of items in the warrant attachment explicitly includes the word "DataUSA," the entries' context makes clear that the warrant authorized seizure only of documents relating to DataUSA's business.  Entries (1), (4), and (7) on the list of "Information and Documents" are explicitly limited to information and documents relating to DataUSA.  Entry (6) is limited to records for the purchase of equipment "purchased or leased for use on the premises."  The April warrant had identified the "property or premises" to be searched as "DataUSA Inc. . . . and the computer systems, storage media and data contained therein."  April Warrant,  Costin's Mot. Suppress, Ex. B [Doc. No. 191-2].  The remaining three entries, in both warrants, while not explicitly mentioning DataUSA, refer to "clients," "survey jobs," and "telephone bills and toll records."  Because of their context, these entries logically appear limited to information and documents relating to DataUSA.  Neighboring entries on the same list refer to "polls conducted by DataUSA for clients" and "polls and surveys conducted by DataUSA."  Both warrants reference DataUSA on their faces, and neither mentions any other polling company.  The court therefore construes both warrants as limited to information documents of DataUSA.

Since DataUSA was not in operation earlier than May 2001, the warrants did not

authorize seizure of documents created prior to that month.  The court will discuss

those seized documents dating from before this time in a separate section of this ruling.

See Part IV.G, infra.

> **D.  Standards for Particularity, Probable Cause, and Good Faith Reliance**

"The Fourth Amendment states unambiguously that 'no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation and <u>particularly describing</u> the

place to be searched, and the persons or things to be seized."[7]   Groh v. Ramirez, 540

U.S. 551, 557 (2004) (emphasis in original).  The defendants' argument that the

warrants issued in April and June of 2004 were unconstitutional may be considered in

two separate but related parts:  first, the argument that they were overbroad because

they authorized the seizure of more property than that for which the FBI had shown

probable cause; and second, the argument that they included no meaningful limitation

at all, making them unconstitutional "general warrants."

---

[7]The Fourth Amendment applies to searches of computer hard drives and seizure of electronic data as well as to more traditional searches and seizures.  In the former case, the computer storage device is analogous to a container, and computer files to separate items within the container. See United States v. Irving, 2003 WL 22127913, at *5 (S.D.N.Y. Sept. 5, 2003) (collecting cases), aff'd on other grounds, --- F.3d ----, 2006 WL 1735582 (2d Cir. Jun 23, 2006); United States v. Al-Marri, 230 F.Supp.2d 535, 541 (S.D.N.Y. 2002) (citing United States v. Runyan, 275 F.3d 449, 458 (5th Cir. 2001) and United States v. Barth, 26 F.Supp.2d 929, 936 (W.D.Tex. 1998)).

### 1.    Overbreadth[8]/Probable Cause

Even "an otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based."  LaFave, 2 Search and Seizure § 4.6(a) at 607.  "It is established law . . . that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause." Franks v. Delaware, 438 U.S. 154, 165 (1978).  "The essence of probable cause is a reasonable, objective basis for belief in a suspect's guilt, although not necessarily proof of guilt beyond a reasonable doubt." United States v. Webb, 623 F.2d 758, 761 (2d Cir.1980).  "[P]robable cause is a fluid concept-turning assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."  Gates, 462 U.S. at 232.

"[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis . . . for conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires nothing more."  Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).  "Presented with a warrant application, the judge must "simply . . . make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons

---

[8]The court uses the term "overbreadth" to refer to authorizing seizures in excess of probable cause, but it notes that some courts have also used this term, more generally, to describe a lack of particularity.  Compare United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 149 (3d Cir. 2002) (contrasting a "general warrant" with an "overly broad" warrant, or one that authorizes the seizure of items for which the magistrate lacks probable cause) with United States v. Abboud, 438 F.3d 554, 575-76 (6th Cir. 2006) (using the term "overbroad" in a discussion of the particularity requirement).

supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." U.S. v. Martin, 426 F.3d 68, 74 (2d Cir. 2005) (quoting Gates, 462 U.S. 213 at 238).  "A magistrate's determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (internal quotation marks omitted).  "[I]n a doubtful case, [the court] accord[s] preference to the warrant."  United States v. Irving, — F.3d ----, 2006 WL 1735582, at *12 (2d Cir. Jun. 23, 2006) (citing United States v. Rivera, 928 F.2d 592, 602 (2d Cir. 1991).

### 2.    General Warrants/Particularity

A search is presumptively unconstitutional if it is not conducted pursuant to a warrant that states with particularity the place to be searched and the persons or things to be seized.  Groh, 540 U.S. at 559.  "In order to prevent a wide-ranging exploratory search, the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." George, 975 F.2d at 75 (internal citations omitted).  That is, the "warrant must be sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize."  United States v. Liu, 239 F.3d 138, 140 (2d Cir. 2000) (internal citation and quotation marks omitted).

"The Fourth Amendment by its terms requires particularity in the warrant" itself. Groh, 540 U.S. at 557 (internal citations omitted).  Particularity in supporting documents does not satisfy the Fourth Amendment unless such documents are incorporated by reference in the warrant.  Id. at 557 (internal citations omitted); see United States v. George, 975 F.2d 72, 76 (2d Cir. 1992).

### 3.      Good Faith Reliance by an Executing Officer

The Supreme Court has established an exception to the requirement that a search must be conducted pursuant to a valid warrant, i.e., one that is particular and supported by probable cause, where an "officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." United States v. Leon, 468 U.S. 897, 920 (1984). "[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search," so long as the officer's reliance is objectively reasonable. Id. at 922. The government has the burden of demonstrating the objective reasonableness of the officer's reliance. George, 975 F.2d at 77. The "standard of reasonableness . . . requires officers to have a reasonable knowledge of what the law prohibits." Id. (internal citation omitted). "[D]epending on the circumstances of a particular case, a warrant may be so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." Id. at 923.

### E.      April 2004 Warrant

The defendants argue that the April 2004 warrant was overbroad because it authorized seizures in excess of probable cause and that it lacked particularity, i.e., was a general warrant, because it listed virtually every type of document likely to be found in a polling company's office without further limitation. See United States v. Leary, 846 F.2d 592, 602-03 (10th Cir. 1988); In re Grand Jury Proceedings, 716 F.2d 493, 498 (8th Cir. 1983). The court finds that the magistrate judge who signed the April warrant had a substantial basis for believing that the April Rovelli affidavit established probable

17

cause to support seizure of all of the categories of documents listed in the warrant

attachment, even though they were not limited by job or client names.  Similarly, the

court finds that the inclusion of broad categories of documents in the warrant did not

render it a general warrant.  Whether the omission of any date limitation from the

warrant rendered it overbroad or less particular than required by the Fourth Amendment

is a closer question, but one that the court need not reach, because it finds that the

good faith exception applies.

### 1.    Overbreadth/Probable Cause

a.    Probable Cause to Seize Broad Categories of Documents.

The court begins by considering whether the April 2004 Rovelli affidavit established

sufficient probable cause to support the seizure of broad categories of documents,

rather than documents relating to particular clients or jobs.  The affidavit provided

evidence of systematic, widespread falsification of survey data and overbilling of clients.

See ¶¶ 8-10, 18, 20, 28, 29 [Doc. No. 191-2].  Most strikingly, it recounts Mastri's

allegation that every job DataUSA conducted in 2001 "had a very high percentage of

completely false records of telephone interview surveys" and that an employee entered

falsified surveys on almost every job in 2002.  See Part II, supra.  The magistrate judge

therefore had a substantial basis for believing that seizure of all documents

encompassed by the categories in Attachment B, and not just documents pertaining to

certain jobs or clients, would uncover evidence of wrongdoing.  See United States v.

Abboud, 438 F.3d 554, 571 (6th Cir. 2006) (holding that an FBI check kiting analysis

that showed that 85 percent of defendants' deposits during a three-month period were

kited funds established probable cause to seize business records within that three-

18

month period, though not for other time periods).  Moreover, the fraud alleged in the

April 2004 Rovelli Affidavit involved billing clients for work that was not actually

completed, so the magistrate judge would also have had a substantial basis for

believing that evidence of a lack of legitimate transactions, such as might be provided

by comparing phone bills and toll records to survey and polling data or client invoices,

would provide evidence of the crimes at issue.  See Ninety-Two Thousand Four

Hundred Twenty-two Dollars and Fifty-seven Cents, 307 F.3d 137, 151 (3d Cir. 2002)

(hereinafter Food Stamps Case) (holding that a warrant was permitted to authorize

seizure of broad classes of documents where evidence of the amount of the suspect's

legitimate business activity was important to the investigation, but that failure to limit

evidence to be seized by dates of alleged crimes rendered the warrant overbroad).

The court concludes that the categories of documents used in the warrant did not

render it overbroad.

      b.     Lack of Time Limitation and Probable Cause:  Reasonable
Reliance.  If the April affidavit did not provide sufficient evidence to establish a

reasonable probability that fraud was occurring in DataUSA for the entire time of its

operation, see Part IV.C, supra, however, the warrant would then be overbroad.  See,

e.g., United States v. Abboud, 438 F.3d 554, 576  (6th Cir. 2005); Food Stamps Case,

307 F.3d at 151.  It was objectively reasonable for Rovelli to believe that the evidence in

the affidavit provided probable cause to seize documents from the entire period of

DataUSA's operation, which began in either May or June of 2001.  The affidavit

contained specific evidence of fraud occurring in 2001 and 2002, including the accounts

given by Griego, Johnson, Goclowski, and Mastri.  It contained evidence that Mastri,

who also gave a general account of fraudulent practices at DataUSA, sporadically conducted work for Data USA after 2002.  See April 2004 Rovelli Aff. ¶ 22, Costin's Mem. Supp. Mot. Suppress, Ex. A [Doc. No. 191-2].  The accounts of the former DataUSA employees described systematic and widespread fraudulent practices at the company, see id. ¶¶ 8-10, 18, 20, 28, 29 [Doc. No. 191-2].  Taking all of this evidence together, it was objectively reasonable for Rovelli to presume that the magistrate judge found a fair probability that documents from every date on which DataUSA operated would provide evidence of wrongdoing.   See Food Stamps Case, 307 F.3d at 151 (internal citation, quotation mark, and brackets omitted) (holding that, even though the absence of a time limitation did make the warrant overbroad, it "did not make the warrant so facially deficient as to render official belief in its legality entirely unreasonable.").

The defendants, citing Groh v. Ramirez, 540 U.S. 551 (2004),[9] argue that the court should not apply the good faith exception because Rovelli both prepared and executed the warrants.  See Costin's Supplemental Mem. Supp. Mot. Suppress at 11-12 [Doc. No. 217].  Although the Groh court held that the fact that the agent had prepared the invalid warrant prevented him from arguing "that he reasonably relied on the magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid," 524 U.S. at 564, the Groh warrant was so facially deficient that it would have been unreasonable for the agent who prepared it not

---

[9] Groh addressed qualified immunity rather than the good faith exception to the exclusionary rule; however, it applied the Leon standard in holding that the warrant was so facially deficient in its lack of particularity that "'executing officers cannot reasonably presume it to be valid.'"  540 U.S. at 565 (quoting Leon, 468 U.S. at 923).

to realize that it lacked particularity.  It indicated only the place to be searched and did not include any mention of which items were to be seized.  In contrast, the April 2004 warrant did limit the documents to be seized. The court concludes that it was objectively reasonable for Rovelli to rely on the magistrate judge's approval of the warrant.

The court also notes that that Rovelli was forthright with the magistrate judge. The defendants do not present any evidence suggesting that Rovelli attempted to mislead the magistrate judge or that he intentionally exceeded the scope of the warrant.

The court holds that the good faith exception applies with respect to any deficiency in probable cause arising from the lack of a time limitation.  In all other respects, the court finds that the magistrate judge had a substantial basis for believing the warrant was supported by probable cause.

## 2.    General Warrant/Particularity

a.    Broad Categories of Documents and Particularity.  The defendants also argue that the warrant was general because it listed virtually every type of document likely to be found in a polling company's office, limited only by broad criminal statutes.  The court agrees with the defendants that the broad criminal statutes mentioned in the warrant would not, in and of themselves, bring particularity to an otherwise general warrant.  See United States v. George, 975 F.2d at 77 (noting, in discussion of good faith exception, that "it was quite clear when the warrant was executed that 'limits' to a search consisting only of a broad criminal statute were invalid").  However, insofar as the defendants argue that the warrant permitted seizure of so many different types of documents that it did not provide any meaningful limitation at all, the court disagrees.  In addition to the broad criminal statutes, the April warrant

21

was limited to certain types of documents (polls, survey data, telephone bills, etc.), see Part II, supra, and did not permit seizure of all business records.

Moreover, the evidence in the affidavit suggests that the warrant could not feasibly be limited to particular jobs or clients.  Although some witnesses whom Rovelli interviewed had offered examples of specific clients or jobs for which employees falsified data, these examples illustrated accounts of a widespread fraud, rather than suggesting that the fraud was limited to certain clients or jobs.  See, e.g., April 2004 Rovelli Aff. at 8-10, 28-29, Costin's Mem. Supp. Mot. Suppress, Ex. A [Doc. No. 191-2]. Additionally, even though the government does not claim that this is a case in which all records of the business could be seized, Gov.'s Mem. Opp. Mot. Suppress at 24 [Doc. No. 200-1]; see U.S. Postal Svc. v. C.E.C. Svcs., 869 F.2d 184, 187 (2d Cir. 1989); United States v. Markey, 131 F.Supp.2d 316, 326 (D.Conn. 2001), the fraud described in the affidavit appears so closely related to DataUSA's daily business activities that documentation of the fraud would be heavily intertwined with documentation of its legitimate business activities.  See April 2004 Rovelli Aff. at 8-10, 18, 20, 28, 29, Costin's Mem. Supp. Mot. Suppress, Ex. A [Doc. No. 191-2]. [10]  The court finds that the warrant was sufficiently particular under these circumstances.  See Andresen v. Maryland, 427 U.S. 463, 480 n.10 (1976) ("The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable

---

[10]The government informed the court at oral argument that it does not argue that DataUSA's entire business involved engaging in criminal conduct, as the Second Circuit requires to permit seizure of "all records" of a business, U.S. Postal Svc. v. C.E.C. Svcs., 869 F.2d 184, 187 (2d Cir. 1989); see United States v. Markey, 131 F.Supp.2d 316, 326 (D.Conn. 2001), see also Gov.'s Mem. Opp. Mot. Suppress at 24 [Doc. No. 200-1].  Therefore, the court does not consider whether the government could have seized all records of the business.

cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession.");[11] United States v. Young, 745 F2d 733, 759 (2d Cir. 1984) ("Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant); United States v. Ford, 184 F.3d 566, 575 (6th Cir. 1999) ("The degree of specificity required in a warrant depends on what information is reasonably available to the police in the case."); United States v. Le, 173 F.3d 1258, 1275 (10th Cir. 1999) (internal citations and alterations omitted) ("[E]ven generally phrased warrants are valid when they are phrased ''as specifically as the circumstances and the nature of the activity under investigation permit."); see also United States v. Abboud, 438 F.3d 554, 575 (6th Cir. 2006) (holding that, in a business fraud case, seizure of all business records did not offend particularity requirement).

The court finds the cases cited by the defendants on this point to be distinguishable.  See United States v. Kow, 58 F.3d 423 (9th Cir. 1995); United States v. Leary, 846 F.3d 592 (10th Cir. 1988); In re Grand Jury Proceedings, 716 F.2d 493

---

[11]The court is troubled by the government's citation to Andresen in its opening opposition memorandum.  The government claimed that warrants at issue in the present case were more particular than that at issue in Andresen because they did not include the open-ended final phrase, "together with other fruits, instrumentalities and evidence of crime at this (time unknown)."  Andresen, 427 U.S. at 479-82, quoted in Gov.'s Mem. Opp. Mot. Suppress at 12 [Doc. No. 200].  The government failed to mention that, in the Andresen warrant, the above-quoted phrase was part of a list following the extremely specific prefatory phrase, "(T)he following items pertaining to sale, purchase, settlement and conveyance of lot 13, block T, Potomac woods subdivision, Montgomery County, Maryland."  427 U.S. at 480 n.10.  The Andresen court held that this context limited the meaning of the general phrase.

(8th Cir. 1983).   In both <u>Leary</u> and <u>Grand Jury Proceedings</u>, the courts rejected the government's argument that the complexity of the criminal scheme at issue precluded greater particularity because the supporting affidavit established probable cause to suspect fraud in only one or a handful of particular transactions.   <u>Grand Jury Proceedings</u>, 716 F.2d at 498-99; <u>Leary</u>, 846 F.2d at 604-05.   Here, in contrast, Rovelli had collected evidence suggesting that fraud was integral to DataUSA's business practices for a significant period of time.   Also, although the affidavit mentions some particular jobs and clients, it also provides evidence that the fraud existed beyond those named jobs.   <u>See</u> pp. 22, <u>supra</u>.

The defendants also relied on <u>Kow</u>.  The warrant at issue in <u>Kow</u> was broader than the present one.  It authorized seizure of essentially all electronic data, as well as virtually all documents in the store being searched.  Moreover, the <u>Kow</u> affidavit, unlike the April affidavit, detailed the various locations where officers could find relevant documents.  <u>Id.</u> at 427.  The <u>Kow</u> warrant omitted this available information.  In contrast, this type of particularizing information was not available regarding DataUSA.

It is this court's conclusion that the inclusion of categories of documents used in the April warrant did not render it a general warrant.  They were sufficiently particular in light of the circumstances and activity under investigation.

b.   Lack of Time Limitation and Particularity:  Reasonable

<u>Reliance</u>.  A warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular.  <u>See</u> <u>United States v. Abboud</u>,  438 F.3d 554, 576  (6th Cir. 2005) (holding that a warrant was insufficiently particular because it was not limited to documents from

24

the time period for which the magistrate had probable cause to believe fraud had occurred);  United States v. Ford, 184 F.3d 566, 576 (6th Cir. 1999) ("Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad."); United States v. Abrams, 615 F.2d 541, 545 (1st Cir. 1980) (holding that warrant that authorized seizure of all "business and billing and medical records" in doctors' office that showed medicare fraud was impermissibly general, and suggesting that if the supporting affidavit "contains an averment by an employee that fraudulent practices were regularly pursued during his or her employment, and the term of such employment is set forth, the warrant could authorize the seizure of all records of Medicare and Medicaid services billed and purportedly performed during that period"); but see Food Stamps Case, 307 F.3d at 151 (holding that failure to include date limitation in broad warrant permitted seizures in excess of probable cause, but did not render warrant general).

The court finds that Rovelli was objectively reasonable in believing the April warrant was not a general warrant even though it lacked a time limitation. Even assuming that Rovelli was subject to the DOJ guidelines quoted in Costin's supplemental memorandum, [Doc. No. 217]; see Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations, §II.C. Sept 1(b) (July 2002), http://www.usdoj.gov/criminal/cybercrime/s&smanual2002.htm#_11C1_ [hereinafter DOJ Guidelines]; see also Groh, 540 U.S. at 564 (finding significant the fact that the guidelines of officer's department put him on notice that he could be liable for executing a constitutionally insufficient warrant), these particular guidelines, and the caselaw above, instruct officers to limit warrants by relevant dates only when such

25

dates are available.  DOJ Guidelines §II.C. (quoting United States v. Ford, 184 F.3d 566, 576 (6th Cir. 1999)).  For the reasons discussed in Part IV.E.2.b, supra, it was objectively reasonable for Rovelli to believe that no limiting dates were available to narrow the category of items to be seized, and that the omission of limiting dates did not render the warrant general.  The court holds that it was objectively reasonable for Rovelli to rely on the magistrate judge's conclusion that the warrant was sufficiently particular despite its lack of time limitation.

For the reasons above, the court therefore denies the defendants' motions to suppress with respect to documents properly seized pursuant to the April warrant.

### F.    June 2004 Warrant

The supporting affidavit for the June warrant, which permitted a search of files on computers that the government had received from Costin in connection with an investigation of her estranged husband, Leonard Mastri, omitted the detailed descriptions of information provided by particular DataUSA employees that Rovelli had included in the April warrant.  Nevertheless, the court finds that the good faith exception applies to the June warrant, with respect to both overbreadth and particularity.

### 1.    Overbreadth/Probable Cause

The court does not reach the question of whether the June warrant provided sufficient probable cause to support the seizure of broad categories of DataUSA documents, unlimited in time or by job or client, because the court finds that it was objectively reasonable for Rovelli to rely on the magistrate judges's determination that the warrant was not overbroad.

26

a.    Probable Cause to Seize Broad Categories of Documents:

Reasonable Reliance.  Although the June affidavit provided fewer details than the April

affidavit, it would have been objectively reasonable for Rovelli to infer from the evidence

that Mastri confirmed, see June 2004 Rovelli Aff. ¶¶ 6-7, 17, Costin's Mem. Supp. Mot.

Suppress, Ex. C [Doc. No. 191-2],[12] that fraud was an integral and routine part of

DataUSA's business practices.  For example, the affidavit recounted allegations that

"Costin instructed DataUSA employees to falsify polling data that was to be sent to

DataUSA's clients," id. at ¶6.  It would be objectively reasonable for Rovelli to infer from

this sentence and the description of fraudulent practices that followed it that the

employees were under instruction to falsify data to be sent to all of the company's

clients, an implication not inconsistent with the evidence of a widespread fraud that was

contained in the April 2004 Rovelli affidavit.  Therefore, it was objectively reasonable for

Rovelli to rely on the magistrate judge's conclusion that there was probable cause to

---

[12]With respect to the June Affidavit's omission of the DataUSA's supervisors' names, the court notes that mere conclusory statements by an affiant are not sufficient to establish probable cause.  Gates, 462 U.S. at 239.  An affidavit may rely on information that an affiant has obtained from unnamed informants if the totality of the circumstances establish probable cause.  See, e.g., United States v. Smith, 9 F.3d 1007, 1012-14 (2d Cir. 1993); see also United States v. Beckett, 321 F.3d 26, 32-33 (1st Cir. 2003) (finding that law enforcement officer relied in good faith on search warrant finding probable cause on the basis of information from unnamed informants).  In assessing the totality of the circumstances, the court considers the informants' veracity, reliability, and basis of knowledge, as well as whether the law enforcement officials have independently corroborated any of the information provided by the informants.  United States v. Gagnon, 373 F.3d 230, 236-237 (2d Cir. 2004).

Although the summary of unnamed employees' statements, without  more, probably would not be sufficient to establish their veracity or reliability, the affidavit states that Mastri "confirmed the information about DataUSA making up polling data interviews" and "advised that the raw data located on the DataUSA computers would prove that the surveys were falsified."  June 2004 Rovelli Aff. ¶ 17, Costin's Mem. Supp. Mot. Suppress, Ex. C [Doc. No. 191-1].  Therefore, a fair reading of the affidavit is that Mastri confirmed the information summarized in paragraphs six and seven.

believe evidence of fraud would be found in the wide range of documents contained in Attachment A.  <u>See</u> Part IV.E.1.a, <u>supra</u>.

                              <u>b.</u>      <u>Lack of Time Limitation and Probable Cause:  Reasonable Reliance.</u>  It was also objectively reasonable for Rovelli to rely on the magistrate judge's determination that such probable cause covered the entire time period of DataUSA's operation.  The evidence of fraudulent practices that Mastri confirmed, <u>see</u> June 2004 Rovelli Aff. ¶¶ 6-7, 17, Costin's Mem. Supp. Mot. Suppress, Ex. C [Doc. No. 191-2], combined with the evidence that Mastri had access to all of DataUSA's computer hardware, software, and data from May 2001 (when the company began operations, <u>see</u> Part II, <u>supra</u>) through 2002 and conducted sporadic work for DataUSA after that time period, June 2004 Rovelli Aff. ¶ 9, Costin's Mem. Supp. Mot. Suppress, Ex. C [Doc. No. 191-2],  made it objectively reasonable for Rovelli to believe that DataUSA had defrauded clients for as long as it had conducted business.  Therefore, the court finds that Rovelli's reliance on the magistrate judge's conclusion that the June warrant was fully supported by probable cause, despite its lack of date limitation, was objectively reasonable.  The good faith exception applies in this respect to the June 2004 warrant.

                    **2.**      **General Warrant/Particularity**

      The June warrant authorized a search of only a handful of computer storage devices, rather than an entire office, but it was still required to particularize the files to be seized, just as the April warrant was required to particularize items to be seized from the DataUSA offices.  <u>See</u> n. 7, <u>supra</u>.  The categories of items to be seized under the June warrant were identical to those under the April warrant, aside from the fact that the

former were confined to the contents of several computer systems or storage media. The June Rovelli affidavit did not provide any new information that could be used to limit the types of files to be seized, although it did provide fewer details about the fraud.

Although the June affidavit omits certain details from the April affidavit that pertain to the integration of fraudulent and legitimate business activities and the widespread nature of the fraud, the court has concluded that it was objectively reasonable for Rovelli to believe that the June affidavit provided evidence of fraud that was routine and integral to DataUSA's business, and which covered the duration of DataUSA's operation.  See Part IV.F.1, supra.  Additionally, the June affidavit did identify specific clients, jobs, or time periods for which the evidence of fraud was particularly strong.

In light of the court's reasoning with respect to the April warrant, see Part IV.E.2, supra, the court finds that it was objectively reasonable for Rovelli to believe that it was not feasible to further particularize the June warrant, and to believe that the warrant was sufficiently particular in light of the circumstances and nature of the activity under investigation.  Thus, Rovelli was objectively reasonable in relying, as he did in good faith, on the magistrate judge's approval of the warrant.  The good faith exception applies.  The court therefore denies the motion to suppress with respect to the files and information seized pursuant to the June warrant.

### G.    Warrantless Seizures

Although the parties have framed the present motions primarily in terms of whether the warrants themselves were valid, the defendants have also argued that the government seized documents created prior to the date on which DataUSA began

29

operating.  Having found that the warrants were limited to documents relating to

DataUSA, the court finds that the seizures of documents created prior to the date on

which DataUSA began operations were not supported by either warrant.  The

government has not established that it had any basis other than a warrant for seizing

those documents.[13]

"[W]hen items outside the scope of a valid warrant are seized, the normal

remedy is suppression and return of those items, not invalidation of the entire search.

United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988) (internal citations omitted).

"[S]uppression of all evidence seized is not justified unless those executing the warrant

acted 'in flagrant disregard' of the warrant's terms."  Id.  "Government agents flagrantly

disregard the terms of a warrant so that wholesale suppression is required only when

(1) they effect a widespread seizure of items that were not within the scope of the

warrant, and (2) do not act in good faith."  United States v. Liu, 239 F.3d 138, 140 (2d

Cir. 2000) (internal citations and quotation marks omitted).

The court finds that Rovelli acted in good faith.  For this reason, it holds that

---

[13]The government's inevitable discovery argument would not apply to documents
outside the scope of the warrant. This argument relies upon the fact that the government had
served a subpoena on the "Custodian of Records/Office Manager/DataUSA" on June 2, 2004.
This subpoena demanded the production of precisely the same list of documents contained in
the warrant attachments.

The government also argued generally that Costin consented to the June 2004 search
of the computer hard drives, but it did not make the same argument with respect to the April
search of the DataUSA offices.  Although the court previously asked the government to submit
a particularized inventory of the individual documents seized in each search, the record before
the court remains insufficiently particular to permit the court to conclude that any non-DataUSA
documents – that is, any of the documents outside the scope of the warrant – were seized
during the June search.  The court therefore does not reach the legal issue of whether Costin's
consent to the search of the same computers in connection with a 2003 investigation would
have permitted the government to search the computer hard drives again in June 2004 in the
absence of a valid warrant.

Rovelli did not act in flagrant disregard of the warrant's terms, even though he appears to have seized some documents that were outside the scope of the warrant. Therefore, it orders the suppression and return of only those of the seized items that were created prior to May 2001.[14]

## V.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part the defendants' Motions to Suppress [**Doc. Nos. 191 & 197**]. The court grants both Motions to Suppress, in part, only with respect to any seized documents or files that were created prior to May 2001. No such documents or files may be used against Costin. Any seized documents or files created earlier than May 2001 may be used against Hylton only if the government seized them from a DataUSA computer other than one located on Hylton's desk, or from the DataUSA Server Room.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 31st day of July, 2006.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

_____

[14]Recognizing the slight disagreement between the parties as to the date on which DataUSA began its operations, see Part II, supra, the court would permit the defendants to file a supplemental motion to suppress, should they find such a motion advisable, showing that DataUSA did not, in fact, begin operating until June 2001.